## GLASCO v. STATE ELECTION BOARD et al.

No. 17546—Opinion Filed July 9, 1926.

(Syllabus.)

**1. Elections—District Judges—Constitutionality of Act Dividing District Into Nominating Districts.**

Section 9 of article 7 of the Constitution, providing that a district judge "shall be a citizen of the United States and shall have been a resident of the territory embraced within the state 1or two years, and of the territory comprising his district at least one year prior to his election," does not prohibit the Legislature from dividing a judicial district into two or more nominating districts and requiring candidates for district judge to be residents of such nominating districts.

**2. Constitutional Law—Statutes—Construction—Persuasive Force of Practical Construction by Legislature.**

The construction placed on statutes or constitutional provisions by the legislative department of the state government for a long period of time, when such construction has been long acquiesced in, though not controlling, is highly persuasive upon this court in reaching a conclusion as to the proper construction to be placed thereon.

Original action by E. E. Glasco against the State Election Board and the members thereof for writ of mandamus. Writ denied.

J. B. Dudley, J. T. Blanton, Ben F. Williams, and Roy Glasco, for plaintiff.

George F. Short, Atty. Gen., by W. L. Murphy, Asst. Atty. Gen., for defendants.

MASON, J. Section 9 of article 7 of the Constitution of Oklahoma provides that:

"Until otherwise provided by law, the state shall be divided into 21 judicial districts and the qualified electors in each of the said districts shall elect a judge of the district court as provided herein, except in the Thirteenth judicial district two judges shall be elected. Such judge shall be a citizen of the United States, and shall have been a resident of the territory embraced within the state for two years, and of the territory comprising his district at least one year, prior to his election; and he shall have been a lawyer licensed by some court of record, or shall have been a judge of some court of record, or both such lawyer and judge, or four years next preceding his election, and shall reside in his district during his term of office. * * *"

And section 24 of article 7 of the Constitution provides that district court judicial district No. 14 shall comprise the counties of Cleveland, Garvin, McClain, and Murray. With the adoption of the Constitution and at the general election every four years thereafter, the Fourteenth district court judicial district, composed of the aforementioned counties, elected one district judge. The Ninth, or 1923, Legislature, at its regular session, by chapter 35 of Session Laws 1923, provided that said district should elect an additional judge, and also divide the district into two nominating districts, one to be composed of the counties of Cleveland and McClain and the other to be composed of the counties of Garvin and Murray.

E. E. Glasco, the plaintiff herein, a resident of McClain county, filed his application with the State Election Board to have his name printed upon the ballot in all four of the counties constituting said district as a candidate for the Democratic nomination for district judge in such district, to be voted upon at the primary election to be held on August 3, 1926. The State Election Board refused to have his name printed upon the ballots in any county of the district other than Cleveland and McClain, the nominating district of which he is a resident, and Mr. Glasco has filed this original action in the Supreme Court against the members of the Election Board, praying for a writ of mandamus, directing them to place his name upon the ballot in all four of the counties constituting the district.

It is the contention of plaintiff that the act of the Legislature dividing the Fourteenth judicial district into two nominating districts is violative of and repugnant to the provisions of the Constitution, particularly of section 9 of article 7, supra, in that it prescribes additional qualifications for candidates for district judge to those enumerated in section 9 of article 7, supra, and requires him to live within a certain nominating district of the judicial district; while it is the contention of the defendants that section 3, chapter 35 of Session Laws 1923, dividing the district into two nominating districts, does not in reality prescribe any ad-

ditional qualifications to those found in the Constitution, but that, even if it should be found that it does prescribe additional qualifications, the same are not unreasonable and are such as are by law permitted. In other words, it is the contention of plaintiff that all of the requirements and limitations as a prerequisite to holding the office of district judge are laid down in section 9 of article 7, while it is the contention of defendants that the Legislature is authorized to prescribe other qualifications in addition to those enumerated in the Constitution, providing such additional qualifications or limitations do not in any manner conflict with those prescribed by the Constitution, and they contend that the act complained of in no way conflicts with or interferes with the rights of either the candidate or the voter guaranteed to him by the provisions of the Constitution.

The sole question to be disposed of here is, whether the provision of section 3, chapter 35, of Session Laws 1923, is in conflict with or violative of section 9 of article 7 of the Constitution, defining the qualifications of district judges, and a proper conclusion on that question disposes of the case.

Section 5 of article 3 of the Constitution provides that:

"The Legislature shall enact laws providing for a mandatory primary system, which shall provide for the nomination of all candidates in all elections for state, district, county, and municipal officers, for all political parties. * * *"

And section 36 of article 5 of the Constitution provides that:

"The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever."

It will thus be seen that it was clearly the duty of the Legislature under the Constitution to enact a mandatory primary system for the nomination of all candidates for office, including district judges, and that duty having been performed by the Legislature, its work must stand, unless we can say that the act goes beyond the limitations prescribed by the Constitution.

In Ohio v. Covington, 29 Ohio St. Rep. 102, a situation similar to the one at bar was before the court. It seems that section 4 of article 15 of the Constitution of that state provides that:

"No person shall be elected or appointed to any office in this state, unless possessed of the qualifications of an elector."

And the Legislature passed an act providing that:

"Each member and officer of the police force shall be a citizen of the United States, and a resident citizen, for three years, of the city in which he shall be appointed, and able to read and write the English language."

This act of the Legislature was attacked as being violative of the provisions of the Constitution and prescribing additional qualifications for members of the police force to that provided by the Constitution, and the court upheld its constitutionality, saying:

"The express provision of the Constitution is that a person not an elector shall not be elected or appointed to any office in this state. Now, unless the clear implication is that every person who has the qualifications of an elector shall be eligible to any office in this state, there is no conflict between the statute and the Constitution."

In Hartford v. Craig (Ind.) 31 N. E. 352, the court had under consideration a state of facts very similar to the question under consideration here. The Constitution of that state provided:

"All county, township and town officers shall reside within their respective counties, townships and towns."

And the Legislature enacted a measure providing that:

"No person shall hold the office of councilman unless, at the time of his election, he is a resident of the ward from which he is elected."

And when the act was attacked as violating the provisions of the Constitution, the court said:

"It is, however, competent for the Legislature to impose additional conditions and restrictions not in conflict with any express provision of the Constitution."

A similar question was under consideration in Darrow v. People (Colo.) 8 Pac. 661. It appears that the Constitution of that state provided that:

"No person, except a qualified elector, shall be elected or appointed to any civil or military office in the state."

The Legislature enacted a measure providing that the payment of taxes was a necessary qualification for membership on the board of aldermen. The act was attacked upon the grounds that it was in conflict with the Constitution, and the court held the act valid.

Likewise, in State v. McAlester (W. Va.) 18 S. E. 770, the Constitution provided that:

"No person except citizens entitled to vote shall be elected or appointed to any state, county or municipal office."

—and the Legislature passed an act requiring members of municipal council to be freeholders therein, and the court held the act not violative of the provisions of the Constitution.

Mechem on Public Officers, page 22, lays down the rule that:

"Where, however, the Constitution does not prescribe the qualifications, it is the province and the right of the Legislature to declare upon what terms and subject to what conditions the right shall be conferred. And, where the Constitution has made some provision, but not exclusive ones, the Legislature may add such others as are reasonable and proper." Citing Ohio v. Covington, 29 Ohio St. Rep. 102, and Darrow v. People, 8 Colo. 417.

And Throop on Public Officers, page 82, states that:

"The general rule is that the Legislature has full power to prescribe qualifications for holding office, in addition to those prescribed by the Constitution, if any, provided that they are reasonable, and not opposed to the constitutional provisions, or to the spirit of the Constitution."

Upon these authorities defendants contend that, even though section 9 of article 7 of the Constitution prescribes the qualification for those who may hold the office of district judge in this state, they are not the sole or exclusive qualifications, and the Legislature may prescribe further and additional qualifications, providing those prescribed by the Legislature do not abridge or conflict with those prescribed by the Constitution; further contending that the act of the Legislature dividing the district into two nominating districts in no way conflicts with the qualifications prescribed by the Constitution. This contention is amply supported by the authorities.

When the Constitution of the state was written, it provided for Supreme Court judicial districts, in which candidates for Justice of the Supreme Court were to be nominated and voted for in the general election by the voters of the state at large. Immediately after statehood the Criminal Court of Appeals was created by an act of the Legislature and the state divided into three Criminal Court of Appeals judicial districts, in which candidates for the three members of that court were several-

ly nominated and voted for by the voters of the state at large, and following the provision of the Constitution in creating Supreme Court judicial districts and following the example of the Legislature in creating Criminal Court of Appeals judicial districts, the Legislature, as early as 1913, and practically every session of the Legislature thereafter, provided certain nominating districts in both judicial and senatorial districts, until at the present time we have no less than six judicial districts and almost as many senatorial districts which are subdivided into separate nominating districts. Thus it will be seen that the nominating district within the district has become a fixed and substantial part of our mandatory primary system directed to be provided by the Constitution, and, so far as our information goes, the legality of such nominating district has never been questioned, but has been acquiesced in by all departments of the state government, and defendants cite ample authorities sustaining their contention that, where, for a long period of time, the executive and legislative departments of government have construed a constitutional provision in a particular manner, such construction thus placed upon it, though not controlling, is highly persuasive. Betts v. Land Commissioners, 27 Okla. 64, 110 Pac. 766; Higgins v. Brown, 20 Okla. 355, 94 Pac. 703; Territory v. Long-Bell Lumber Co., 22 Okla. 890, 99 Pac. 911; City Council v. Board of Commissioners, 33 Colo. 1, 77 Pac. 858.

Also citing Coyle v. Smith, 28 Okla. 121, 113 Pac. 944, in the eighth paragraph of the syllabus of which this court, speaking through Mr. Justice Williams, said:

"If the meaning of a constitutional provision is doubtful, a practical construction thereof by the Legislature will be followed by this court, if it can be done without doing violence to the fair meaning of the words used, to sustain the constitutionality of the statute."

Also, in Foot v. Town of Watonga, 37 Okla. 43, 130 Pac. 597, in the second paragraph of the syllabus, this court said:

"The construction placed on statutes or constitutional provisions by officers in the discharge of their duties, either at or near the time of the enactment, which has been long acquiesced in, is a just medium for its judicial interpretation."

As sustaining this contention defendants also cite 9 R. C. L. 1004, in which delay in questioning the constitutionality of a statute is under consideration, and the following language is used:

"They must act in seasonable time. and not delay until the conditions they have acquiesced in and assented to have become firmly established as a part of the system of government."

And in 12 C. J. 714, it is said:

"* * * And the long continued and unquestioned exercise of a given power by the Legislature is a weighty consideration in favor of the constitutionality of such exercise of authority, provided such enactments have been uniform."

Therefore, we reach the conclusion that when the Legislature passed the act complained of in this case, it merely followed the beaten path which had its beginning in the Constitutional Convention and has been consistently followed by the various sessions of the Legislature of this state down to the passage of the act in question, and which has become such a well-settled part of our mandatory primary system that it cannot now be overturned without turmoil and confusion.

The writ is denied.

HARRISON, PHELPS, LESTER, and RILEY, JJ., concur.

BRANSON, V. C. J., concurs in conclusion, but not in reasoning.

HUNT, J., dissents.

Note.—See under (1) 33 C. J. p. 939 §29. (2) 12 C. J. p. 715 §§66, 67.