THE STATE OF KANSAS, *Appellee,* v. MICHAEL WEISS,
*Appellant.*

No. 17,292.

### SYLLABUS BY THE COURT.

1. INTOXICATING LIQUORS—*Statute Prohibiting Sale for Any Purpose Held Valid.* The constitutional amendment forever prohibiting the manufacture and sale of intoxicating liquors in this state, except for medical, scientific and mechanical purposes, is not a restriction upon the power of the legislature to prohibit by statute. In the absence of such amendment the legislature would possess such power, and its authority is not diminished thereby. Sections 1 and 2 of chapter 164 of the Laws of 1909 (Gen. Stat. 1909, §§ 4361, 4362), making it unlawful to sell intoxicating liquors for any purposes, upheld.

2. JURY AND JURORS—*Agreement as to One Count, Disagreement as to Others—Reception of Verdict.* Where the jury had been out some time, and reported an agreement on one count and a disagreement as to the others, and the court announced that it would receive such verdict, and did receive the same; *held,* not error.

Appeal from Sedgwick district court. Opinion filed February 11, 1911. Affirmed.

*D. M. Dale, S. B. Amidon,* and *Jean Madalene,* for the appellant.

*Fred S. Jackson,* attorney-general, *W. A. Ayres,* county attorney, and *George McGill,* deputy county attorney, for the appellee.

The opinion of the court was delivered by

WEST, J.:   The appellant was charged in thirteen counts of an information with the sale of intoxicating liquor and in the fourteenth with maintaining a nuisance. Seven counts were eliminated by dismissal, leaving six for selling and one for maintaining a nuisance. After the jury had been out some time, but during the day on which the trial began, they reported an agree-

ment on the fourteenth and a disagreement as to the other counts, and the court announced that it would receive such a verdict, to which the defendant objected. No finding was made by the court as to the disagreement, but the verdict stated that the jury did not agree on the fifth, sixth, seventh, eighth, ninth, and tenth counts. A motion for a new trial was denied, and sentence pronounced under the fourteenth count.

The appellant urges that the announcement by the court that such a verdict would be received amounted to a suggestion to the jury that a record thereof be made in the verdict, thus making possible a future prosecution. As no question of former jeopardy or acquittal arises here, it is not necessary to discuss what effect the verdict and discharge of the jury may have upon a further prosecution, should such be attempted, but see *The State v. Allen,* 59 Kan. 758, and *The State v. Klauer,* 70 Kan. 384. There was no error in thus receiving the verdict.

The serious contention is that chapter 164 of the Laws of 1909 is void, because in conflict with the prohibitory amendment; that the sections of the act relating to sales are void for this reason, and, being inseparably connected with the nuisance section, their frailty attaches to that also. It is argued that the constitutional prohibition of the "manufacture and sale of intoxicating liquors . . . . except for medical, scientific and mechanical purposes" (Const. art. 15, § 10), is equivalent to a mandate directing the legislature not to interfere with such manufacture and sale for the three excepted purposes. But we regard the amendment as a prohibition upon personal conduct, not upon legislative action, further than upon any attempt to legalize sales for beverage purposes. Without the amendment the legislature would have power to prohibit the manufacture and sale of intoxicating liquors (*Haug v. Gillett,* 14 Kan. 140; *Kidd v. Pearson,* 128 U. S. 1; *Farmville v. Walker,* 101 Va. 323; *Hart v. State,* 87

Miss. 171; *City of New Orleans v. Smythe,* 116 La. 685; *Cook v. Marshall County,* 119 Iowa, 384), and certainly the amendment has not diminished such power unless, as counsel suggest, it means that "the manufacture and sale of intoxicating liquors shall be forever prohibited in this state, but that this restriction shall not apply to liquors used for medicinal, scientific and mechanical purposes." We are unable to construe the language of the amendment as a grant of power, for without it the legislature might have provided a license system or might have suppressed the traffic. Our attention is called to the language of Mr. Justice Brewer in the *Prohibitory-Amendment Cases,* 24 Kan. 700, that "license has limitations, restraints and penalties" (p. 723) ; but he was there giving the minority and not the controlling view of the court, and in the preceding paragraph the majority opinion was stated—that "the amendment has simply enlarged and increased these restrictions. It permits the sale for certain purposes. It thus, without abrogating penalties, simply puts additional limitations upon the sale. Before the amendment, and under the dram-shop act, the licensed dealer might sell to adults not habitual drunkards, upon secular days not devoted to special purposes. Under the amendment, such licensed dealer may still sell, but only for certain purposes. The right to sell remains. The conditions of license continue. The only change is in the limitations upon the purposes for which the sale may be made. My associates think this the sounder argument and the true construction." (p. 723.)

In *In re Holcomb, Petitioner, &c.,* 21 Kan. 628, the question arose whether an act attaching territory as yet not divided into counties to an adjoining district, for judicial purposes, was within the general powers granted to the legislature or in conflict with any constitutional provision. Section 14 of article 3 of the constitution provides that "judicial districts . . . shall be formed of compact territory and bounded by

county lines." The act attached undivided territory to the county of Ford for judicial purposes, and it was argued that this was in violation of this section of the constitution, but the court said:

"It is true the constitution nowhere in terms authorizes the attaching of such territory, but it is also true that it nowhere, directly or indirectly, prohibits such attaching; and, if there be no prohibition directly or by implication, then the act is within the general grant of legislative power." (p. 634.)

In *Prouty v. Stover, Lieut. Governor,* 11 Kan. 235, it was said that "to declare a law void as conflicting with an express provision of the constitution, the conflict must be clear. So say all the authorities. None the less clear must the conflict be when it is conceded that no express provision has been violated, and only claimed that some negation must be implied from the affirmative language of the constitution which is irreconcilable with the law." (p. 256.) Also, that "all legislative power is vested in the legislature. Prescribing the rules, manner and requisites of elections is a legislative act. There is no express constitutional inhibition. Implied inhibitions are, it is true, equally potent; but their existence must be equally evident." (p. 255.)

In *Ratcliff v. Stockyards Co.,* 74 Kan. 1, the true rule as to legislative power in this state was announced: "The legislature represents the people of the state, and there are no limits upon the power which that body may exercise, except such as may be found in the constitution itself, or in the federal constitution." (p. 16.)

Counsel call attention to *Atchison Street Rly. Co. v. Mo. Pac. Rly. Co.,* 31 Kan. 660, where, in speaking of the provision of section 16 of the bill of rights that "no person shall be imprisoned for debt, except in cases of fraud," it was said that this limits the power of the legislature and no act of that body can be sustained which conflicts therewith. This is doubtless true, but

it would not do to say that this declaration compels the legislature to imprison for debt in case of fraud, or that the exception of cases of fraud amounts to a command thus to imprison. Here is found an express prohibition upon imprisonment for debt except in one case, but doubtless in the excepted case the legislature is still free to imprison or not, as it may deem proper.

But this question is settled by the decision in *The State v. Durein,* 70 Kan. 13, where the constitutionality of the statute in question was thoroughly considered. That case was affirmed by the supreme court of the United States. (*Fritz Durein v. Kansas,* 208 U. S. 613.) Judge Pollock, of this federal district, recently had the question under consideration in *Harrison v. Taggart* (1910), and held that it is no longer open for decision in view of the Durein case.

The judgment of the trial court is affirmed.